UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-against-

RASHEIM CARLTON,

Defendant.

**ORDER**

05 Cr. 796 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

On August 24, 2022, Defendant Rasheim Carlton filed a motion for

compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  (Def. Br. (Dkt. No. 64))  The

Government opposes Carlton's application.  (Govt. Ltr. (Dkt. No. 73))

Carlton's motion will be granted to the extent set forth below.

**BACKGROUND**

I.      **CHARGES AND TRIAL**

On May 28, 2004, Carlton and three accomplices robbed a Dobbs Ferry, New

York branch of Wachovia Bank, leaving with approximately $42,000 in cash.  (PSR ¶¶ 7-13)

During the robbery, Carlton brandished a handgun and held several bank employees at gunpoint

while another accomplice gathered the money.  (Id. ¶ 8)

Carlton was arrested and charged with bank robbery, in violation of 18 U.S.C.

§ 2113(a); armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d); and using and carrying

a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(C)(i).

(Indictment (Dkt. No. 1))  In July 2006, Carlton proceeded to trial before the Hon. Stephen C.

Robinson.  A jury found Carlton guilty on all counts.  (July 21, 2006 Trial Tr. (Dkt. No. 48) at 121-

23)

Using the 2005 edition of the Sentencing Guidelines, the Probation Department

calculated Carlton's offense level as 34, his criminal history score as 10, and his Criminal

History Category as V.  (PSR ¶¶ 17, 31, 74)  The Probation Department determined, however,

that Carlton was a career offender pursuant to U.S.S.G. § 4B1.1, because of (1) a 1992

conviction for attempted burglary in the second degree; and (2) 1998 convictions for bank

robbery conspiracy, armed bank robbery, Hobbs Act robbery, use of a firearm during and in

relation to a crime of violence, and possession of cocaine base with intent to distribute it.  (Id.

¶ 74)

Because of Carlton's prior Section 924(c) conviction, a mandatory consecutive

sentence of 25 years' imprisonment applied to the instant Section 924(c) charge.  (Id. ¶¶ 18, 100)

On February 7, 2007, Judge Robinson sentenced Carlton to an aggregate sentence

of fifty years' imprisonment and five years' supervised release.  (Judgment (Dkt. No. 15) at 1-3)[1]

To date, Carlton has served approximately fifteen years of his fifty-year sentence.[2]

## II.    APPEAL AND SECTION 2255 PETITIONS

On May 31, 2007, Carlton filed a notice of appeal concerning his conviction.

(Notice of Appeal (Dkt. No. 17))  In a July 16, 2008 decision, the Second Circuit affirmed the

judgment of conviction.  United States v. Carlton, 534 F.3d 97 (2d Cir. 2008).

---

[1]  The page numbers of documents referenced in this Order correspond to the page numbers
designated by this District's Electronic Case Files ("ECF") system.

[2]  Carlton has been in custody since June 30, 2004.  In June 2006, however, he received a
30-month sentence for violating the conditions of his supervised release in an earlier case.  (See
Second Am. Judgment in Case No. 98 Cr. 151 (Dkt. No. 47) at 2; PSR ¶ 70)  Judge Robinson
imposed his 50-year sentence on Carlton on February 7, 2007, after Carlton had already finished
serving the 30-month sentence he received for his supervised release violation.  Although Judge
Robinson did not mention this 30-month sentence during the February 7, 2007 sentencing
proceeding in the instant case, pursuant to 18 U.S.C. § 3584(a), "[m]ultiple terms of
imprisonment imposed at different times run consecutively unless the court orders that the terms
are to run concurrently."  18 U.S.C. § 3584(a).

On November 18, 2009, Carlton filed a <u>pro</u> <u>se</u> petition pursuant to 28 U.S.C.

§ 2255 to vacate his sentence.  (Case No. 09 Civ. 9645 (Dkt. No. 1)).  On November 23, 2009,

Judge Robinson referred Carlton's petition to Magistrate Judge George A. Yanthis for a Report

& Recommendation ("R&R").  (<u>Id.</u> (Dkt. No. 2))

On November 15, 2010 – following Judge Robinson's resignation from the bench

– this case was assigned to this Court.  (<u>Id.</u> (Dkt. No. 8); <u>See</u> Robinson, Stephen C., Fed. Jud.

Ctr., https://www.fjc.gov/node/1391976 (last accessed Nov. 17, 2022))

On March 20, 2013, Judge Yanthis issued an R&R recommending that Carlton's

petition be denied.  (Case No. 09 Civ. 9645  (Dkt. No. 20) at 1)

In a letter to the Clerk of Court filed on May 28, 2013, Carlton reported that he

had received a copy of the R&R, had requested an extension of time to submit objections, had

not received a response from the Court, and wanted an opportunity to submit objections to the

R&R.  (<u>Id.</u> (Dkt. No. 21))

In a June 6, 2013 order, this Court extended Carlton's time to object to the R&R

to 14 days after he had received a copy of the June 6, 2013 order.  (Id. (Dkt. No. 22))  Over the

next nearly two years, however, the Court received no objections from Carlton.  (<u>Id.</u>, Dkt. Sheet

from Dkt. No. 22 to No. 25)

On February 19, 2015, Carlton submitted his objections to Judge Yanthis's March

20, 2013 R&R.  (<u>Id.</u> (Dkt. No. 25))

On May 18, 2016, Mathew B. Larsen of Federal Defenders of New York

appeared on behalf of Carlton.  (<u>Id.</u> (Dkt. No. 27))  That same day, Larsen requested that this

Court not rule on Carlton's Section 2255 petition and that he be permitted to amend Carlton's

petition to add a claim for relief under <u>Johnson v. United States</u>, 576 U.S. 591 (2015).  (<u>Id.</u> (Dkt.

No. 28))  This Court granted Carlton's request the next day.  (Id. (Dkt. No. 29))  On June 22,

2016, Carlton moved to amend his Section 2255 petition to add the Johnson claim.  (Id. (Dkt.

No. 31))  This Court granted that motion on June 27, 2016.  (Id. (Dkt. No. 32))

On August 26, 2016, this Court stayed Carlton's petition pending the Supreme

Court's resolution of a circuit split regarding the proper application of Johnson.  (Id. (Dkt.

No. 34))  In a series of letters over the next two years, Carlton requested that the Court continue

the stay.  (See Dkt. Nos. 35-41)  In an October 15, 2020 letter, Carlton withdrew his Johnson

claim, but did not ask the Court to lift the stay of his Section 2255 petition.  (Id. (Dkt. No. 43))

## III.    MOTION FOR COMPASSIONATE RELEASE

On August 24, 2022, Carlton filed the instant motion for a reduction in sentence

pursuant to 18 U.S.C. § 3582(c)(1)(A).  Carlton contends that he is entitled to compassionate

release because (1) his fifty-year sentence is unjust, and under the current Guidelines he would

no longer be treated as a career offender; (2) Judge Robinson committed factual and legal error at

sentencing; (3) Carlton's medical condition warrants his release in light of the COVID-19

pandemic; (4) Carlton has been rehabilitated; and (5) Judge Robinson expressed a desire –

shortly after sentence was imposed – to resentence Carlton to 35 years' imprisonment.[3]  (Def. Br.

(Dkt. No. 64) at 6; Def. Reply (Dkt. No. 74) at 1-2))  Carlton asks the Court to sentence him to

---

[3]  As discussed below, in preparing its response to Carlton's compassionate release motion, the
Government reviewed materials associated with Carlton's February 8, 2007 sentencing.  The
U.S. Attorney's Office files indicate that – the day after the sentencing – Judge Robinson
contacted the Assistant U.S. Attorney ("AUSA") then assigned to this case and "informed the
AUSA that he wanted to resentence Carlton to a lower term of imprisonment," and that "he was
considering a sentence of approximately 35 years."  (See Def. Reply, Ex. A (Dkt. No. 74-1))
The Government has contacted Judge Robinson and the AUSA, both of whom have since left
public service.  Judge Robinson does not recall this incident, while the former AUSA recalls
nothing else about the incident.  Id.

time served, which would amount to approximately fifteen years' imprisonment for the instant

conviction.  (Def. Br. (Dkt. No. 64) at 6; see also supra n.2)

## DISCUSSION

## I.    LEGAL STANDARD

The compassionate release statute provides that a court may,

upon motion of the Director of the Bureau of Prisons, or upon motion of the
defendant . . . reduce the term of imprisonment (and may impose a term of
probation or supervised release with or without conditions that does not exceed
the unserved portion of the original term of imprisonment), after considering the
factors set forth in section 3553(a) to the extent that they are applicable, if it finds
that . . . extraordinary and compelling reasons warrant such a reduction. . . .

18 U.S.C. § 3582(c)(1)(A).

Pursuant to this statute, a defendant seeking compassionate release must "fully

exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion

on the defendant's behalf," or "30 days [must have elapsed] from the receipt of such a request by

the warden of the defendant's facility. . . ." Id.

## II.    ANALYSIS

### A.    Exhaustion of Administrative Remedies

On October 26, 2021, Carlton submitted a request for a reduction in sentence to

the warden of his facility – Federal Correctional Institution, Allenwood Medium.  (Def. Br., Ex.

D (Dkt. No. 64-4))  The warden denied Carlton's application on November 23, 2021.  (Id.)  The

Government does not dispute that Carlton has exhausted his administrative remedies (Govt. Ltr.

(Dkt. No. 73) at 3), and the Court concludes that Carlton has satisfied the exhaustion

requirement.  See 18 U.S.C. § 3582(c)(1)(A).

B.      **"Extraordinary and Compelling Reasons"**

The Second Circuit has instructed that district courts have broad discretion to consider "the full slate of extraordinary and compelling reasons" that might warrant modification of a defendant's sentence under Section 3582(c)(1)(A). See United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020). Indeed, "[t]he only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" Id. at 237-38 (emphasis in original) (quoting 28 U.S.C. § 994(t)). The Court considers below each of the grounds Carlton cites in support of his compassionate release motion.

1.      **Severity of Sentence, Plea Offer, and Change in Sentencing Guidelines Career Offender Provision**

Carlton argues that (1) his fifty-year sentence "for a bank robbery in which no shots were fired and no one was hurt"; and (2) the fact that he no longer would be treated as a career offender under the Sentencing Guidelines, constitute "extraordinary and compelling" reasons justifying a reduction in his sentence. (Def. Br. (Dkt. No. 64) at 14-19)

The parties agree that a sentence of fifty years' imprisonment for a 28-year old defendant convicted of "an armed bank robbery where no firearm was discharged and no one was hurt" is "unusually long." (Govt. Ltr. (Dkt. No. 73) at 4; see also (Def. Br. (Dkt. No. 64) at 14-16)

In resolving a compassionate release motion, district courts are permitted to consider whether the relative harshness of a sentence constitutes an "extraordinary and compelling reason" favoring release. See Brooker, 976 F.3d at 237 (rejecting district court's holding that excessive length of a sentence "'cannot qualify as an extraordinary and compelling circumstance'" under Section 3582(c)(1)(A) (quoting United States v. Zullo, 581 F. App'x 70 (2d

Cir. 2014)); see also United States v. Clark, 2021 WL 1066628, at *3 (S.D.N.Y. Mar. 18, 2021) (finding an unduly "harsh sentence" to be an extraordinary and compelling reason).

The Government argues that the "'likelihood or even certainty that the defendant would receive a lower sentence if sentenced today is not, standing alone, an extraordinary and compelling reason for a sentence reduction.'"  (Govt. Ltr. (Dkt. No. 73) at 4 (quoting United States v. Marrero, 2020 WL 7079483, at *3 (S.D.N.Y. Dec. 3, 2020)))  But Carlton is making a somewhat different argument.  Carlton is arguing that the fifty-year sentence – at the time it was imposed – was unjust and unusually harsh given all the surrounding circumstances, including the Defendant's age, the fact that no shots were fired, and the fact that no one was injured as a result of the Defendant's crimes.  (See Def. Br. (Dkt. No. 64) at 14-16 (arguing that the fifty-year sentence was "unjust and was indeed 'too long in the first place'"))  Brooker makes clear that this Court may consider whether the unusually lengthy nature of the sentence imposed on Carlton constitutes an "extraordinary and compelling reason[]" justifying a reduced sentence under Section 3582(c)(1)(A).  See Brooker, 976 F.3d at 237; see also United States v. McCoy, 981 F.3d 271, 286 (4th Cir. 2020) ("[T]he district courts permissibly treated as 'extraordinary and compelling reasons' for compassionate release the severity of the defendants' § 924(c) sentences.").

In arguing that his fifty-year sentence was excessive, Carlton cites two other circumstances:  (1) the U.S. Attorney's Office offered him a seven-year plea deal prior to trial; and (2) as a result of a change in the Sentencing Guidelines, Carlton would now no longer be treated as a career offender, and he would face a much reduced Guidelines range.  (Def. Br. (Dkt. No. 64) at 15-19)  The Government does not dispute either that Carlton was offered a seven-year

plea or that he would not be a career offender under the Guidelines currently in effect.  (Govt. Ltr. (Dkt. No. 73) at 4)

As to the plea offer, the Government's offer of a seven-year plea suggests that the Government did not believe – at the time – that a fifty-year sentence was necessary to protect the community.  The Government's reasons for the plea offer are not in the record, however, and plea offers are made for a multitude of reasons.  Moreover, the Government's view of an appropriate sentence may change over time, based on new information or a better understanding of a defendant's culpability.  In sum, a plea offer extended prior to trial is not necessarily indicative of what a proper sentence is after trial and preparation of a pre-sentence report.

As to the change in the career offender provision of the Sentencing Guidelines, the Guidelines define a "career offender" as someone who (1) was at least eighteen years old at the time they committed the subject offense; (2) has committed a felony that is either a "crime of violence or a controlled substance offense"; and (3) "has at least two prior felony convictions of either a crime of violence or a controlled substance offense."  U.S.S.G. § 4B1.1(a) (2021); U.S.S.G. § 4B1.1(a) (2005)  As discussed above, Carlton was treated as a career offender at his 2007 sentencing because of a 1992 conviction for attempted burglary,[4] and 1998 convictions for armed bank robbery and possession of cocaine base with intent to distribute it.  (PSR ¶¶ 34-35, 42-43, 74)

The 2005 version of the Guidelines lists "burglary of a dwelling" and offenses falling under a residual clause – offenses which "otherwise involve[] conduct that presents a serious potential risk of physical injury to another" – as predicate crimes for purposes of the

---

[4] Carlton's conviction for attempted burglary resulted from March 12, 1992 conduct in which he "stood as the lookout while his brother Ronald and another[] rang the bell of [a] ground-level apartment and attempted to push in the door."  (PSR ¶ 35)

career offender provision.  U.S.S.G. § 4B1.2(a)(2) (2005).[5]  The current Guidelines' definition of "crime of violence" does not refer to burglary, nor does it contain the residual clause."[6]  U.S.S.G. § 4B1.2(a) (2021).  Accordingly, Carlton would have only one predicate conviction under today's Guidelines, and would not qualify as a career offender.

At sentencing, Judge Robinson concluded that Carlton – as a career offender – faced a Guidelines range of 562 to 627 months.  (Sent. Tr. (Dkt. No. 70) 4:3-8)  Absent the career offender designation, Carlton's Guidelines range is 410 to 437 months, a difference of 152 to 190 months.  (See PSR ¶¶ 28, 74, 102; U.S.S.G. Ch. 5, Pt. A – Sent. Tbl. (2005) (calculated by adding the 300-month Section 924(c) mandatory minimum term to the 110-137-month range found in the sentencing table for a defendant with an offense level of 26 and a criminal history category of V))

Courts in this Circuit and elsewhere have found that where a change in the applicable sentencing law would result in a lower sentence, that development can constitute an "extraordinary and compelling reason" justifying a reduction in sentence under Section 3582(c)(1)(A).  See United States v. Ramsay, 538 F. Supp. 3d 407, 426-27 (S.D.N.Y. 2021) (the "mandatory nature" of a sentence at the time it was imposed, and the fact that such a sentence

---

[5]  The Second Circuit had instructed in United States v. Andrello, 9 F.3d 247, 250 (2d Cir. 1993), that attempted burglary "must be considered a crime that 'involves conduct that presents a serious risk of physical injury to another.'"

[6]  The Sentencing Commission removed "burglary of a dwelling" and the residual clause from the list of career offender predicates following the Supreme Court's decision in Johnson, 576 U.S. 591.  Amdt. 798, U.S.S.G. Supp. to App. C at 118, 120-21.  In Johnson, the Supreme Court held that a similar residual clause – which defined "violent felony" for purposes of the Armed Career Criminal Act of 1984 as an offense that "involves conduct that presents a serious potential risk of physical injury to another" – was unconstitutionally vague.  Johnson, 576 U.S. at 593-97.  In removing the residual clause from the definition of a "crime of violence," the Commission found that the clause "implicates many of the same concerns cited by the Supreme Court in Johnson."  Amdt. 798, U.S.S.G. Supp. to App. C at 121.

would no longer be mandatory, can be "extraordinary and compelling"); United States v. Ballard, 552 F. Supp. 3d 461, 467-68 (S.D.N.Y. 2021) (First Step Act's changes to Section 924(c) mandatory minimum sentences is an "extraordinary and compelling" reason for purposes of a sentence reduction motion under Section 3582(c)(1)(A); see also United States v. McCoy, 981 F.3d 271, 284-88 (4th Cir. 2020) (same); United States v. Maumau, 993 F.3d 821, 827, 835-37 (10th Cir. 2021) (same); United States v. Ruvalcaba, 26 F.4th 14, 26 (1st Cir. 2022) (change in penalties for drug trafficking offenses can constitute an "extraordinary and compelling reason"); see also United States v. Campbell, 2022 WL 199954, at *2 (2d Cir. Jan. 24, 2022) (summary order) (remanding for reconsideration of compassionate release motion given that "changes in sentencing law" may "constitute extraordinary and compelling reasons justifying a sentence reduction").  Moreover, the Supreme Court has recently noted that "the First Step Act allows district courts to consider intervening changes of law[, including whether a defendant would no longer be a career offender under the Guidelines,] . . . in exercising their discretion to reduce a sentence pursuant to the First Step Act." Concepcion v. United States, 142 S. Ct. 2389, 2403-04 (2022); see also United States v. Shaw, 2021 WL 3007266, at *5 (W.D. Va. July 15, 2021) (finding that a change in the Guidelines career offender provision would lead to the defendant receiving a sentence that is 22-months shorter than the sentence previously imposed; concluding that this change constituted an "extraordinary and compelling reason" justifying compassionate release); United States v. Guthrie, 2021 WL 5988252, at *3 (W.D. Va. Dec. 17, 2021) (same, with a 71-month disparity); United States v. Johnson, 2022 WL 1510544, at *6 (S.D.W. Va. May 12, 2022) (same, with a 101-month disparity).

In sum, the 50-year sentence imposed by Judge Robinson was unusually severe given the Defendant's age (28) and the fact that no weapon was fired and that the Defendant's

offenses resulted in no injury.  Moreover, the change in the Guidelines career offender provision would lead to Carlton facing a significantly reduced Guidelines sentencing range.  The Court concludes that each of these circumstances constitutes an "extraordinary and compelling reason" justifying a sentence reduction.

### 2.  Alleged Legal and Factual Errors at Sentencing

The record indicates that while Carlton was being sentenced for robbing one bank, Judge Robinson may have believed that he was sentencing Carlton for "robb[ing] three banks."  (Sent. Tr. (Dkt. No. 70) 10:25)

At sentencing, defense counsel argued that if he took a poll of people on Mamaroneck Avenue in White Plains about what was appropriate punishment "if you robbed a bank for a second time," "most people[] would say . . . that [30-years' imprisonment] sounds appropriate."  (Sent. Tr. (Dkt. No. 70) 10:10-15)

Judge Robinson responded as follows:

> Except what you would have said to them in that circumstance is not if you robbed a bank a second time.  What [you would] say to them is, if your first conviction were for eight separate crimes and then you robbed three banks after that, what should happen?

(Id. at 10:21-25 (emphasis added)).  Neither defense counsel nor the Government corrected Judge Robinson's reference to Carlton being sentenced for robbing three banks.

The Government argues, however, that later in the proceedings, the Government made "clear that the defendant had robbed just one bank."  (Govt. Ltr. (Dkt. No. 73) at 3)  It is true that in its argument the Government stated that – after Carlton's release from prison – "[h]e decided to recruit other people to help him rob a bank, . . .a bank very similar to the banks he had robbed before . . . .  [He] went into the Wachovia Bank in Ardsley, and along with another accomplice, robbed that bank."  (Sent. Tr. (Dkt. No. 70) 15:22-16:3).  The Government never

11

corrected Judge Robinson's statement concerning the "three banks," however, and even after the Government's presentation, Judge Robinson reiterated that – "[l]ess than a year after getting out [of prison]" – Carlton "not only decides that he will engage in criminal behavior, which would be troubling enough, he decides that he will rob <u>banks</u> [and] that he will also do it with a gun." (Id. 18:9-12 (emphasis added))

The record indicates that the sentencing judge may have been confused about the number of bank robberies that Carlton was being sentenced for.  Although Carlton was being sentenced for robbing one bank, Judge Robinson stated that Carlton had "robbed three banks" after having been released from prison.  The judge's apparent misunderstanding was not directly corrected by counsel.  Indeed, Judge Robinson's colloquy with defense counsel indicates that the judge's belief that Carlton had "robbed three banks" after his release from prison may have been a motivating factor for the 50-year sentence Judge Robinson imposed.  (See Sent. Tr. (Dkt. No. 70) 10:23-25 ("What you [would] say to them is, if your first conviction[s] were for eight separate crimes and then you robbed three banks after that, what should happen?"))

The Court concludes that the sentencing judge's confusion about the number of bank robberies for which Carlton was being sentenced constitutes an "extraordinary and compelling reason" justifying a reduction in Carlton's sentence.

### 3.    <u>Carlton's Medical Conditions</u>

Carlton argues that his health conditions – "diabetes (recently diagnosed), obesity, asthma, and possible liver disease" – place him at an increased risk of serious illness from the COVID-19 virus, and that these circumstances constitute an "extraordinary and compelling reason" justifying a reduced sentence.  (Def. Br. (Dkt. No. 64) at 20-24).[7]  Carlton received at

---

[7]  Carlton's BOP medical records indicate that he suffers from asthma and diabetes – for which he takes multiple medications – and that he is obese, with a BMI of 32.5.  (Def. Br., Ex. E (Dkt.

least two doses of the Pfizer COVID-19 vaccine in early 2021.  (Def. Br., Ex. E (Dkt. No. 64-5) at 5)

The COVID-19 virus continues to present a significant risk of harm, particularly to those who suffer from serious co-morbidities or who are immunocompromised.  See Underlying Medical Conditions, CDC, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (last updated June 15, 2022) (indicating that individuals who suffer from diabetes, obesity, and asthma face a higher risk of serious illness from COVID-19).  And while vaccination significantly reduces the risk of serious illness, the virus continues to circulate, resulting in serious illness or death to certain members of our community.  See Benefits of Getting A COVID-19 Vaccine, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html (last updated Aug. 17, 2022).

Acknowledging these unfortunate realities – which exist both in prison and in the larger community – Carlton has not demonstrated that his medical condition constitutes an "extraordinary and compelling reason" justifying a reduced sentence.  As of November 17, 2022, there are no active COVID-19 cases among staff and inmates at Allenwood Medium FCI, where Carlton is being held.  COVID-19 Coronavirus, Bureau of Prisons, https://www.bop.gov/coronavirus (last accessed Nov. 17, 2022).  Given these circumstances and Carlton's access to vaccination, his medical conditions do not constitute "extraordinary and compelling reasons" justifying his release.  See United States v. Palaniappan, 2022 WL 9449638, at *1 (E.D.N.Y. Oct. 14, 2022) (denying motion for compassionate release of a vaccinated defendant who suffers from diabetes, high blood pressure, high cholesterol and obesity); United

---

No. 64-5))  The records do not establish that he suffers from liver disease.  (See Def. Br. (Dkt. No. 64) at 22)

States v. Folkes, 2022 WL 1469387, at *6-7 (E.D.N.Y. May 10, 2022) (collecting similar cases

in the S.D.N.Y. and the E.D.N.Y.).

###        4.        **Carlton's Rehabilitation**

Carlton argues that he has been rehabilitated during his eighteen years of

incarceration and that he presents "no danger to the public."  (Def. Br. (Dkt. No. 64) at 24-30)

According to Carlton, he has "been written up just four times – and all for nonviolent conduct."

(Def. Br., Ex. C (Dkt. No. 64-3) at 4-5 (noting that Carlton's infractions include writing "a

sexually charged letter to a female [staff member] seeking a sexual relationship"))  He has also

obtained his GED and taken hundreds of hours of courses in cooking, legal research, and anger

management.  (Id. at 2)  Carlton has also submitted letters from family members and friends

stating that he is a changed man.  (Def. Br., Exs. G-K (Dkt. Nos. 64-7-11))

The Government argues that Carlton's "rehabilitation is not comparable to that

put forth by those defendants for whom 'total rehabilitation' was a factor weighing 'strongly in

favor of extraordinary and compelling reasons.'"  (Govt. Ltr. (Dkt. No. 73) at 4 (quoting United

States v. Rodriguez, 492 F. Supp. 3d 306, 311-12 (S.D.N.Y. 2020)).  Indeed, in cases such as

Rodriguez, the evidence of rehabilitation was much more extensive.  Rodriguez, 429 F. Supp 3d

at 311-12 (citing "[a]n extraordinary collection of letters – from fellow inmates, family, friends,

and, most important, 27 members of the prison staff – . . . [demonstrating] that Rodriguez is

wholly rehabilitated."); see also United States v. Tellier, 2022 WL 1468381, at *3-4 (S.D.N.Y.

May 10, 2022) ("Defendant's rehabilitation is remarkable. . . . During his incarceration,

Defendant has completed his GED, a 915-hour paralegal program, over forty vocational and

educational programs, 900 hours of religious courses, has become a certified drug and alcohol

treatment specialist, taken several college courses and diligently studied the law. . . . As a

'jailhouse lawyer,' Defendant . . . never turned away anyone who sought his legal assistance and accepted nothing in return for his services.")

       The record here demonstrates that Carlton has accepted responsibility for his criminal conduct and has largely complied with prison rules and regulations during his incarceration.  But these circumstances are not "extraordinary."  Compliance with prison rules is what is expected.  Accordingly, Carlton's rehabilitation does not constitute an "extraordinary and compelling reason" justifying a reduced sentence.

### 5.     <u>The Sentencing Judge's Alleged Change of Heart</u>

       As discussed above, the U.S. Attorney's Office's files indicate that the sentencing judge contacted the assigned AUSA shortly after Carlton's sentencing and stated that he "wanted to resentence Carlton to a lower term of imprisonment," and that he "was considering a sentence of approximately 35 years."  (<u>See</u> Def. Reply, Ex. A (Dkt. No. 74-1)))  Carlton argues that this communication constitutes an "extraordinary and compelling reason" justifying a reduced sentence.  (Def. Reply (Dkt. No. 74) at 1-2)

       The Court does not give weight to this alleged communication.  The former judge has no recollection of this alleged incident from fifteen years ago, and the AUSA has no recollection beyond what is reflected in the U.S. Attorney's Office files.  (Def. Reply, Ex. A (Dkt. No. 74-1))  As (1) a highly experienced jurist; (2) a former prosecutor in the S.D.N.Y. U.S. Attorney's Office; and (3) the former U.S. Attorney for the District of Connecticut, Judge Robinson would have been well aware that the law does not permit a judge who has "second thoughts" about a sentence he imposed to simply change his mind and resentence the defendant to a lesser sentence.  <u>See</u> Robinson, Stephen C., Fed. Jud. Ctr., https://www.fjc.gov/node/1391976 (last accessed Nov. 17, 2022)**.**  Accordingly, the sentencing

judge's alleged change of heart is not an "extraordinary and compelling reason" justifying a reduction in sentence.

*    *    *    *

To summarize, the following circumstances constitute " extraordinary and compelling reasons" justifying a reduction in sentence:  the severity of the 50-year sentence given the Defendant's age and the fact that no weapon was fired and that the Defendant's offenses resulted in no injury; the change in the Guidelines' career offender provision; and the sentencing judge's confusion about the number of bank robberies for which Carlton was being sentenced.

**C.      Section 3553(a) Factors**

In ruling on Carlton's compassionate release motion, this Court must determine whether a reduction in his sentence is consistent with an analysis of the Section 3553(a) factors. See 18 U.S.C. § 3582(c)(1)(A).

18 U.S.C. § 3553(a) directs a sentencing court to consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .

(5) any pertinent policy statement—

16

>> (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28) . . .

> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

As an initial matter, Carlton's offense was extremely serious. He conducted an armed robbery of a bank, and he threatened multiple bank employees with a gun. Robberies of this nature present a significant risk of serious injury and undoubtedly are traumatizing for victims. (See PSR ¶ 8) Carlton and his accomplice stole more than $42,000 from the bank, which is a substantial amount of money. (Id.) Carlton played a central role in the commission of the offense; he planned the robbery, and he recruited others to participate in it. (Id. ¶¶ 9-10) In a recorded conversation after the robbery, Carlton told a friend that he had committed it, and that he intended to commit additional such crimes. (Id. ¶ 12) While Carlton did not fire his weapon and no one was injured, his conduct presented an extreme risk of harm to those bank employees he terrorized. (See id. ¶¶ 7-13) In short, the circumstances of Carlton's offense demonstrate that he presented – at least at the time of sentencing – an extreme danger to the community.

Carlton's criminal record confirmed that he presented an extreme danger to the community. His crimes began at age sixteen with an attempted burglary, for which he received a sentence of six months' imprisonment and five years' probation. (Id. ¶ 34) The Defendant violated his probation and was re-sentenced to an additional ten months' imprisonment. (Id. ¶¶ 37-38)

In 1998, at age twenty-two, the Defendant was convicted of Hobbs Act robbery, conspiracy to commit Hobbs Act robbery, using a firearm during and in relation to a crime of

violence (two counts); armed bank robbery (three counts); and possession of crack cocaine with the intent to distribute it.  (See Indictment, 98 Cr. 151 (SCR) (Dkt. No. 1); PSR ¶¶ 42-43) Carlton was part of a gang that committed six bank robberies in Westchester and Rockland counties, all of which involved the use of firearms.  (PSR  ¶¶ 45-59)  During this same time, Carlton was also distributing cocaine and crack cocaine in White Plains, employing four street sellers.  (Id. ¶ 59)  He was initially sentenced to an aggregate sentence of 150 months' imprisonment.  (Id. ¶ 43)  After a successful habeas corpus petition, his sentence was reduced to 78 months' imprisonment and five years' supervised release.  (Id. ¶ 44)

In connection with his resentencing, Carlton represented that he had been rehabilitated in prison and that he would never return to criminal conduct.  He described himself as a born-again Christian, and he convinced the probation officer that his "expression of his rehabilitation appeared genuine."  (See id. ¶¶ 68-69)

Carlton commenced his five-year term of supervised release on July 23, 2003. (Id. ¶ 70)  Carlton committed the instant offense – the armed bank robbery of a Wachovia Bank branch in Dobbs Ferry – on May 28, 2004, ten months after being released from prison.  (Id. ¶ 7)

Carlton's repeated commission of crimes that present a significant risk of serious physical injury merited a lengthy term of imprisonment.  And his contempt for the law and for the Court – as demonstrated by his false claims of rehabilitation and quick return to the same criminal behavior after serving a 78-month sentence – likewise merited a lengthy term of imprisonment.  Carlton presented an extreme danger to the community and an extremely high risk of recidivism.  Moreover, the 78-month sentence previously imposed had not been of sufficient length to deter Carlton from returning to bank robbery.

Having said that, the 50-year sentence imposed by the sentencing judge was excessive in light of the Defendant's age and the circumstances of his crimes, which did not involve the discharge of a weapon and did not result in physical injury. As discussed above, there is evidence that the sentencing judge may have been confused about how many bank robberies Carlton was being sentenced for. The Government's plea offer of seven years' imprisonment suggests that the Government did not believe that a 50-year sentence was necessary to protect the community. And the fact that Carlton would no longer be treated as a career offender under the Sentencing Guidelines is a factor that may be considered. Finally, Carlton is now 46 (PSR at 2) and is aging out of the age bracket that presents the greatest risk of recidivism. See The Effects of Aging on Recidivism Among Federal Offenders, Key Findings, U.S. Sent'g Comm'n 30 (Dec. 2017) https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf#page=9 ("[O]lder offenders are substantially less likely to recidivate following release compared to younger cohorts[] . . . by any measure. . . . Older offenders who do recidivate do so later in the follow-up period, do so less frequently, and [have] less serious recidivism offenses on average.").

For all these reasons, Carlton's motion for compassionate release will be granted to the extent that his sentence will be reduced to twenty-five years' imprisonment.

## **CONCLUSION**

Defendant Carlton's motion for compassionate release (Dkt. No. 64) is granted to the extent that his sentence is reduced to twenty-five years' imprisonment. All other terms of the

February 7, 2007 sentence remain in effect.  An Amended Judgment reflecting the Court's ruling

will be filed in due course.

Dated: New York, New York
     November 22, 2022              SO ORDERED.

                                      Paul G. Gardephe
                                      United States District Judge