UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-against-

RASHEIM CARLTON,

                Defendant.

ORDER

05 Cr. 796 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        In a November 22, 2022 order, this Court granted Defendant Rasheim Carlton's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) to the extent that Carlton's 50-year sentence was reduced to 25-years' imprisonment. (Nov. 22, 2022 Order (Dkt. No. 75)) On December 31, 2022, Carlton moved for reconsideration, asking the Court to order his immediate release. (Dec. 31, 2022 Def. Ltr. (Dkt. No. 77)) The Government opposes Carlton's application. **(**Jan. 13, 2023 Govt. Ltr. (Dkt. No. 79))

        For the reasons stated below, Carlton's motion for reconsideration will be denied.

## BACKGROUND

**I.**    **MOTION FOR COMPASSIONATE RELEASE**

        On August 24, 2022, Carlton moved for a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A).[1] (Mot. (Dkt. No. 64)) Carlton contended that he was entitled to compassionate release because (1) his fifty-year sentence was unjust; (2) under the current version of the Sentencing Guidelines, he would no longer be treated as a career offender; (3) the sentencing judge – the Hon. Stephen C. Robinson – committed factual and legal error at

---

[1] The factual and procedural background for Defendant's compassionate release motion is set forth in the Court's November 22, 2022 Order. Familiarity with the November 22, 2022 Order is assumed. (See Nov. 22, 2022 Order (Dkt. No. 75) at 1-4)

sentencing; (4) Carlton's medical conditions warrant his release in light of the COVID-19 pandemic; (5) Carlton has been rehabilitated; and (6) Judge Robinson allegedly expressed a desire – shortly after sentence was imposed – to resentence Carlton to 35 years' imprisonment. (Mot. (Dkt. No. 64) at 6; Def. Reply (Dkt. No. 74) at 1-2))[2] Carlton asked this Court to sentence him to time-served, which would have amounted to approximately fifteen years' imprisonment for the instant bank robbery conviction. (Mot. (Dkt. No. 64) at 6; Nov. 22, 2022 Order (Dkt. No. 75) at 2 & n.2) As noted above, in a November 22, 2022 order, this Court granted Carlton's motion to the extent that it reduced his sentence from 50 years' imprisonment to 25 years' imprisonment. (Nov. 22, 2022 Order (Dkt. No. 75))

II.     **MOTION FOR RECONSIDERATION**

Carlton argues that reconsideration of the November 22, 2022 order is necessary because (1) he suffered a heart attack on December 8, 2022; (2) after his heart attack, he was diagnosed with bradycardia, a condition in which the heart beats too slowly, provides inadequate oxygen to organs, and presents a risk of fainting, heart failure, and cardiac arrest;[3] and (3) the Court – in reducing Carlton's sentence from 50 years' imprisonment to 25 years' imprisonment – overlooked the fact that he had been sentenced to 30 months' imprisonment for a supervised release violation premised on the instant bank robbery. (Dec. 31, 2022 Def. Ltr. (Dkt. No. 77) at 4-7)

---

[2] The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.
[3] See Bradycardia, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/bradycardia/symptoms-causes/syc-20355474 (last visited Jan. 20, 2023).

2

# DISCUSSION

I. **LEGAL STANDARDS**

  A. **Compassionate Release**

The compassionate release statute provides that a court may,

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction. . . .

18 U.S.C. § 3582(c)(1)(A).

  B. **Motion for Reconsideration**

Under Local Rule 49.1(d), "[a] motion for reconsideration . . . shall be filed and served within fourteen (14) days" of the Court's decision and explain "the matters or controlling decisions which counsel believes the Court has overlooked." S.D.N.Y. Crim. R. 49.1(d). "The standards governing criminal reconsideration motions are 'largely the same' as those governing civil reconsideration motions." Simon v. United States, 2021 WL 242360, at *2 (S.D.N.Y. Jan. 25, 2021) (quoting United States v. Lisi, 2020 WL 1331955, at *2 (S.D.N.Y. Mar. 23, 2020)).

The analogous civil rule here is Federal Rule of Civil Procedure 60. See, e.g., United States v. Bolino, 2020 WL 6136258, at *1 (E.D.N.Y. Oct. 19, 2020), aff'd sub nom. United States v. Souza, 2021 WL 3871262 (2d Cir. Aug. 31, 2021) (applying Rule 60(b) standard on reconsideration of defendant's compassionate release motion); United States v. Ballance, 2020 WL 5517299, at *1 (E.D.N.Y. Sept. 14, 2020) (same); see also United States v. Garrett, 15 F.4th 335, 339 (5th Cir. 2021) ("Courts typically construe a motion to reconsider a

denial of compassionate release as a motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e) [or if the motion is filed more than 28 days after denial] . . . 'as if it were a Rule 60(b) motion.'") (quoting Frew v. Young, 992 F.3d 391, 396 (5th Cir. 2021)).

Reconsideration under Rule 60's "onerous standard," United States v. Int'l Bhd. of Teamsters, 247 F.3d 370, 392 (2d Cir. 2001), is appropriate "on grounds of mistake, inadvertence, neglect, newly discovered evidence, fraud, or any other reason justifying the modification of an order or judgment." Bolino, 2020 WL 6136258, at *1. The purpose of a reconsideration motion is not to introduce evidence that was not extant at the time of the original motion or to "'advance new facts, issues or arguments not previously presented to the Court, . . . [or to] relitigat[e] issues already decided by the Court.'" United States v. Ozsusamlar, 2021 WL 4925560, at *2 (S.D.N.Y. Oct. 20, 2021) (quoting Simon, 2021 WL 242360, at *2). "In order to establish entitlement to reconsideration of a decision in light of the availability of new evidence, plaintiffs must demonstrate that: '(1) newly discovered evidence is of facts existing at the time of [the prior decision]; (2) the moving party is excusably ignorant of the facts despite using due diligence to learn about them; (3) newly discovered evidence is admissible and probably effective to change the result of the former ruling; and (4) the newly discovered evidence is not merely cumulative . . . of evidence already offered.'" Dux v. Megasol Cosm. GMBH, 2006 WL 870462, at *1 (S.D.N.Y. Apr. 3, 2006) (quoting Fidelity Partners, Inc. v. First Trust Co. of New York, 58 F. Supp. 2d 55, 59 (S.D.N.Y. 1999)). This is because the purpose of a motion for reconsideration is to draw the Court's attention to "'matters or controlling decisions which counsel believes the Court has overlooked.'" Simon, 2021 WL 242360, at *2 (quoting S.D.N.Y. Crim. R. 49.1(d)). A court cannot have "overlooked" an event or development that took place after it issued its original decision.

## C. Exhaustion of Administrative Remedies

The compassionate release statute requires a defendant seeking compassionate release to "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf." 18 U.S.C. § 3582(c)(1)(A). This obligation is excused only where the warden has had a defendant's application for thirty days and has not acted on it. (Id.) Accordingly, courts may not consider – in resolving compassionate release motions – evidence that was never presented to the warden, including evidence related to events and developments that had not occurred as of the time the defendant filed his application for compassionate release with the warden of his institution. See United States v. LaBarca, 2021 WL 195996, at *3 (S.D.N.Y. Jan. 20, 2021) ("[Defendant's] motion for reconsideration raise[s] [] claims that he failed to brief in the First Motion: . . . that the [recent COVID-19] 'outbreak at FCI Schuylkill . . . strengthens the grounds for granting [Defendant's] Compassionate Release.' . . . These claims have not been presented to the BOP or to the Warden of FCI Schuylkill and, accordingly, have not been exhausted.").[4]

---

[4] To the extent that United States v. Spencer, 2020 WL 3893610 (S.D.N.Y. July 10, 2020) and other decisions consider – on a motion for reconsideration concerning a compassionate release application – events or developments that were never presented to the Bureau of Prisons ("BOP"), and that had not taken place as of the time the compassionate release application was (1) submitted to BOP; or (2) ruled on by the district court, this Court declines to follow that approach. As discussed above, new evidence for purposes of a reconsideration motion – including in the context of a compassionate release application – means "newly discovered evidence . . . 'of facts in existence at the time of the dispositive proceeding.'" See NYC Med. Prac., P.C. v. Shokrian, 2020 WL 1853203, at *3 (E.D.N.Y. Jan. 31, 2020) (quoting Infanti v. Scharpf, 2012 WL 824018 (E.D.N.Y. Mar. 9, 2012)) (emphasis in Shokrian).

5

## II. ANALYSIS

### A. Carlton's Heart Attack and Related Conditions.

Carlton's heart attack took place on December 8, 2022, more than a year after he filed his compassionate release application with the warden (Warden's Response (Dkt. No. 64-4) at 2), and more than two weeks after this Court had issued its decision concerning his compassionate release motion. Carlton's heart attack is thus not "newly discovered" evidence. Moreover, Carlton has not asserted that he requested compassionate release from the warden of his facility based on his heart attack and related conditions. Accordingly, Carlton's heart attack and related conditions do not provide a basis for granting reconsideration. See LaBarca, 2021 WL 195996, at *3; Shokrian, 2020 WL 1853203, at *3 ("Here, the state court action was not dismissed until approximately three weeks after I issued my decision denying Richardson's motion to dismiss. The dismissal was not, therefore, a fact 'in existence' at the time of my decision, so it is not a basis for reconsideration under Rule 60(b)(2).") (citations omitted).

Even if Carlton's December 8, 2022 heart attack and related conditions could be considered on a motion for reconsideration, they would not provide a basis for granting relief. In resolving Carlton's compassionate release motion, this Court issued a 20-page decision that exhaustively reviews his arguments for compassionate relief and carefully analyzes the relevant Section 3553(a) factors. In granting a 25-year reduction – a 50% reduction of Carlton's original 50-year sentence – this Court carefully balanced his "extremely serious" criminal conduct and the danger he presented to the community against the mitigating factors, which include (1) the unusual severity of his original sentence, given the circumstances of his crime; (2) the change in the Sentencing Guidelines career offender provision; and (3) the possibility that the sentencing

judge may have been confused about the number of bank robberies that Carlton was being sentenced for.  (Nov. 22, 2022 Order (Dkt. No. 75) at 6-16)

Carlton's heart attack and related conditions do not justify disturbing this careful balance.  Acknowledging the seriousness of Carlton's cardiac event, he received life-saving medical care in the Bureau of Prisons, and he has an excellent prognosis.  Carlton is 46 years old.  The blockage in his coronary artery was addressed with a drug-eluding stent.  There is no detectable damage to his heart muscle.  He is being treated with blood thinners, and he is being followed by a medical doctor –  board certified in internal medicine – who has managed the care of thousands of patients with cardiovascular disease and a history of heart attacks.  Carlton also has access to cardiologists as needed.   (Cullen Decl. (Dkt. No. 79-1) ¶¶ 1-7; Sealed Cullen Decl. at 6, 9-14)  While a heart attack is an extremely frightening experience for any human being, it is a common scenario, and the treatment for Carlton – cardiac catheterization, installation of a drug-eluding stent, the prescribing of blood thinners, proper diet and exercise – is standard.  Moreover, there is no evidence that the Bureau of Prisons is incapable of addressing Carlton's medical condition.  Indeed, all of the evidence is to the contrary.

The record shows that Carlton received excellent care at FCI Allenwood.  His heart attack was rapidly diagnosed.  After he was stabilized, he was rushed to the University of Pittsburgh Medical Center ("UPMC") at Susquehanna.  The blood clot causing the blockage was removed, and a drug-eluding stent was inserted that restored blood flow to the coronary artery.  (See Cullen Decl. (Dkt. No. 79-1) ¶ 5)

While Carlton complains that he was not permitted to attend cardiac rehabilitation, and that he will not receive a heart-healthy diet or be permitted to exercise at FCI Allenwood (Dec. 31, 2022 Def. Ltr. (Dkt. No. 77) at 4-5), the declaration from his physician –

Dr. Thomas Cullen – refutes these claims. (See Cullen Decl. (Dkt. No. 79-1)) As Dr. Cullen explains, there is no evidence that Carlton's heart muscle was damaged. (Id. at ¶ 6) Accordingly, there is no reason to believe that he needs cardiac rehabilitation. (Id.) Moreover, "FCI Allenwood offers heart-healthy diet options at every meal," and Carlton has access to a gym and recreation facility at the prison. (Id. ¶¶ 8-10) Finally, when Dr. Cullen examined Carlton on December 13, 2022, his vital signs were normal and "he was not suffering from bradycardia."[5]  (Id. ¶ 6)

In sum, even if Carlton's recent heart attack and bradycardia diagnosis were a proper basis for granting reconsideration, they would not justify a further reduction in his sentence.

    **B.**    **The Sentence for Carlton's Violation of Supervised Release**

Carlton contends that this Court – in ruling on his compassionate release motion – overlooked the 30-month sentence he had received for violating the terms of his supervised release – a violation that was premised on the bank robbery underlying the instant case. (Dec. 31, 2022 Def. Ltr. (Dkt. No. 77) at 5-7)  That assertion is incorrect.  In the November 22, 2022 Order, this Court explicitly noted that "[i]n June 2006, [Carlton] received a 30-month sentence for violating the conditions of his supervised release in an earlier case." (Nov. 22, 2022 Order (Dkt. No. 75) at 2 n.2 (citing Second Am. Judgment in Case No. 98 Cr. 151 (Dkt. No. 47) at 2; PSR Para. 70))  This Court was well aware that the supervised release violation for which Carlton received a 30-month sentence was the bank robbery in the instant case.  It was for this

---

[5] Although Carlton challenges Dr. Cullen's opinions regarding his medical condition (Def. Reply (Dkt. No. 80) at 2-5), he has not proffered any evidence that Dr. Cullen's opinions, and his interpretation of Carlton's medical records, are incorrect.

8

reason that this Court remarked that "Judge Robinson did not mention this 30-month sentence during the February 7, 2007 sentencing proceeding in the instant case." (Id.)

The 30-month sentence that Carlton received for his supervised release violation did not justify a reduction in his 50-year sentence, however, and does not justify a further reduction in his sentence now. That is because a sentence imposed for a violation of supervised release addresses the defendant's breach of trust in connection with an earlier case. United States v. Peguero, 34 F.4th 143, 160 (2d Cir. 2022) ("Indeed, 'the very purpose of a supervised release revocation hearing is to determine the gravity of the breach of trust committed by the defendant in the context of the conditional liberty [he] was granted following [his] conviction of the underlying offenses.'") (quoting United States v. Ramos, 979 F.3d 994, 1001 (2d Cir. 2020)); United States v. Sindima, 488 F.3d 81, 86 (2d Cir. 2007) superseded by statute on other grounds as recognized in United States v. Smith, 949 F.3d 60, 64 (2d Cir. 2020) ("'[T]he primary goal of a revocation sentence' ought to be 'to sanction the violator for failing to abide by the conditions of the court-ordered supervision,' in order to account for the breach of trust inherent in failing to appreciate the privileges associated with such supervision. Thus, 'at revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator.'") (quoting U.S.S.G. § 7B1.1 cmt. n. 1); United States v. Verkhoglyad, 516 F.3d 122, 130 (2d Cir. 2008) ("Because [the defendant] had repeatedly betrayed the trust reflected in these lenient sentences, the court reasonably concluded that a sentence in excess of the policy statement range was warranted on his violation of probation.")

The Sentencing Guidelines acknowledge this logic, and counsel that ordinarily a sentence for a supervised release violation should not run concurrently with a sentence later

imposed for the crime that was the predicate for the supervised release violation. U.S.S.G. § 5G1.3, cmt. n.4(C) ("[T]he Commission recommends that the sentence for the instant offense be imposed consecutively to the sentence imposed for the revocation."); id. § 7B1.3(f) ("Any term of imprisonment imposed upon the revocation of probation or supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of probation or supervised release.").

In sum, this Court was well aware of the 30-month sentence that Carlton received in connection with his violation of supervised release. That sentence was imposed because – in committing bank robbery – Carlton breached the trust of the court that had imposed the supervised release term in the earlier case. Carlton was separately sentenced – in the instant case – for the bank robbery he had committed. The sentence Carlton received for violating the terms of his supervised release does not justify a further reduction in his sentence in the instant case.

## CONCLUSION

For the reasons stated above, Carlton's request for reconsideration (Dkt. No. 77) is denied.

Dated: New York, New York
       January 27, 2023                              SO ORDERED.

                                                     _____
                                                     Paul G. Gardephe
                                                     United States District Judge